CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED

1/29/2024
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

KATHERINE SHORE,

        Plaintiff,

v.                             CIVIL ACTION NO.  4:24cv00003

KEYSTONE RV COMPANY,
**SERVE:**
David Thomas
Statutory/Registered Agent
Keystone RV Company
2642 Hackberry Drive
Goshen, Indiana   46526

        Defendant.

## COMPLAINT

COMES NOW the Plaintiff, Katherine Shore, by counsel, and moves for judgment against Defendant on the grounds and in the amounts as hereinafter set forth:

### PRELIMINARY STATEMENT

1.     This case involves claims asserted under the Virginia Uniform Commercial Code and the Magnuson Moss Warranty Act for breach of warranty, for violations of the Virginia Consumer Protection Act, entitling Plaintiff to the recovery of her compensatory damages, statutory damages, exemplary damages, interest, legal fees, and costs.

### PARTIES

2.     Katherine Shore (Ms. Shore) is a citizen of the United States and a natural person domiciled and residing in Virginia and is a consumer and buyer within the meaning of applicable laws.

1

3.      Defendant, Keystone RV Company was at all times relevant a corporation doing business in Virginia and elsewhere and is the manufacturer of the subject 2022 Keystone Fuzion (hereinafter "the RV") that Plaintiff acquired from Defendant RV Retailer Virginia, LLC ("RV Retailer" located in Ringgold, Virginia. Keystone RV Company ("Keystone") is a Delaware corporation that has its principal place of business in Indiana and is a citizen of Indiana and Delaware and was, at all times relevant, engaged in the business of selling and servicing recreational motor vehicles through its authorized dealerships and agents, including RV Retailer Virginia LLC that it maintains in Virginia and elsewhere.

4.      Pursuant to the Keystone warranty that covers the subject RV, Keystone has established numerous authorized dealers, including the RV Retailer in Ringgold, Virginia, and other authorized dealerships located within and outside of the district of this court, to service the subject RV for any necessary repairs covered by its warranty.

5.      Plaintiff acquired the subject RV from RV Retailer, which at all times relevant was a supplier, merchant, and an authorized agent and representative of Keystone RV Company in Virginia. RV Retailer Virginia, LLC is a foreign limited liability company whose principal office is in Fort Lauderdale, Florida, but which does substantial business in the Commonwealth of Virginia through it retail sales locations, one of which is in Ringgold in Pittsylvania County. At all times relevant, RV Retailer was authorized by Keystone RV Company to act for it as one of its authorized agents and representatives in Virginia in all respects related to the sale of the

2

vehicle involved in this case and the attempted repairs and service work for those areas of the vehicle covered by the Keystone Warranty.

6.    The vehicle was assembled and warranted by Keystone RV Company. Keystone distributed the subject RV with knowledge that it would be sold retail by RV Retailer in Virginia and that the sale would be made by a Virginia licensed retail seller who Keystone authorized to sell and service Keystone products and that the purchaser would be in Virginia at the time the product was purchased and/or delivered to the purchaser, all of which happened in this case.

7.    Upon information and belief, Keystone RV Company and RV Retailer entered into a retail sales and service agreement whereby RV Retailer agreed to allow Keystone RV Company to control certain parts of its operations under various contractual terms.

8.    Keystone RV Company and RV Retailer have engaged in substantial business activities in Virginia involving millions of dollars of goods and services being advertised and sold in Virginia, both by shipping into this state and distributing in this state this and other new motor vehicles and nonmotorized vehicles, and by their joint and several continuing substantial business activities with each other and by Keystone with this and other Virginia agents and representatives for them to perform warranty repair and service work in Virginia for and on Keystone RV Company's behalf at its authorized repair facilities located in Virginia.

9.    Presently RV Retailer has motor vehicles manufactured by Keystone RV on its retail lots for sale, which Keystone RV Company shipped or which were otherwise delivered to

3

RV Retailer for the purpose of advertising and selling the subject motor vehicle and other vehicles to the public in Virginia. Keystone RV Company has had a continuing business relationship with at least three authorized sales and repair facilities in Virginia.

10.    Keystone RV Company's internet website lists RV Retailer as an authorized retail seller and service facility and warranty repair facility of Keystone RV Company vehicles. RV Retailer is one of at least three retail sales locations in Virginia where Keystone RV Company engages daily in sales and service through its local authorized sales and service agents and representatives.

## JURISDICTION

11.    Jurisdiction exists with this court because a federal claim exists in which there is more than $50,000 in controversy under 15 U.S.C. § 2301 et seq., invoking 28 U.S.C. § 1331, and the amount in controversy is more than $75,000 and is between citizens of different states, invoking 28 U.S.C. § 1332. This court also has supplemental jurisdiction of the state law claims regarding the same transaction and events pursuant to 28 U. S.C §1367(a).

12.    The RV, which is the subject of this dispute, was acquired by the Plaintiff in Virginia and was defective when acquired. Ineffective repair attempts were made to the RV by Keystone RV Company's authorized agent and representative dealership in Virginia, including RV Retailer.   The dealership where the relationship of the parties arose is in Ringgold, Virginia. The warranty obligations of Keystone RV Company were received by the Plaintiff during the

purchase of the RV in Virginia, and Keystone RV Company and RV Retailer interacted directly with the Plaintiff in Virginia.

## STATEMENT OF FACTS

13.     This case involves a defective 2022 Keystone Fuzion that Keystone RV Company warranted, but was not able to repair, within a reasonable amount of time and whose warranty and contract of warranty this Defendant breached. The last time this RV was in the Keystone authorized repair facility, Katherine Shore was told that they had discovered that the frame was cracked and they would not try to fix it anymore. The existence of the cracked frame has since been independently confirmed and is also occurring in other similar recreational vehicles made and distributed nationwide by Keystone and other RV manufacturers.

14.     On or about July 28, 2022, relying on the express oral, implied and written warranties from Keystone RV Company, as communicated to her by RV Retailer, the Plaintiff, Ms. Shore entered into an agreement, which was a consumer transaction where she agreed to acquire the RV from Keystone RV Company's authorized retail sales outlet, RV Retailer, in return for Keystone RV Company's and RV Retailer's representations and/or promises and/or warranties regarding the vehicle itself, including the promise to repair or replace any covered defect in the 2022 Keystone Fuzion, VIN # 4YDFFZV36NF810833 ("the RV") within the warranty period. The RV's total sales price was $109,853 (inclusive of sales tax of $3,963.00, filing fee of $88.25, processing fee of $589.00). Buyer's Order attached as **Exhibit 1**. Plaintiff

*5*

paid $18,000 down and RV Retailer drafted and accepted a promissory note (finance contract) which arranged for and established a loan to Ms. Shore for the balance of the RV's purchase price ($180,199.20), which required her to pay U.S. Bank, N.A. 240 monthly payments of $825.83 beginning August 27, 2022. This finance contract was then delivered by Defendant RV Retailer to U.S. Bank, N.A. **Exhibit 2.**

15.     After taking delivery of the subject vehicle, Plaintiff began experiencing numerous significant and/or substantial different defects causing the vehicle to be subjected to repair attempts for an excessive number of days in the repair shop and still counting, over the course of numerous separate warranty-covered repair opportunities for Keystone RV Company's authorized warranty repair facilities. As a result, Katherine Shore lost all faith and confidence in the reliability of this RV and the ability of Keystone and/or its respective warranty repair agents, representatives, and/or dealers to live up to its warranty.   After living with the RV's defect experiences, Plaintiff has realized that the RV that was sold to her is an RV that simply was not built right and was not fixed within a reasonable number of attempts or within a reasonable amount of time.

16.     About five weeks after its purchase, the RV went into the Keystone warranty authorized repair shop for 18 defects for 92 days of repair attempts going into December 2022.

17.     The RV went back into the Keystone warranty authorized repair shop again in late December 2022 for another 19 days with 6 more defect complaints and 17 more days of repairs,

by which time it had been in the Keystone warranty authorized repair shop for a total of 111 days

of warranty work which never did all get fixed.

18.     The RV went back into the Keystone warranty authorized repair shop again in

July 2023 for one repair that took 7 days and another 17 days waiting for more repairs to be

performed.

19.     Then the RV went back into the Keystone warranty authorized repair shop again

in July 2023, reaching a new total of 128 days in Keystone warranty authorized repair shops.

20.     From the purchase to the present, the RV has never fully operated without defects.

21.     Katherine Shore experienced repeated problems with this RV, including but not

limited to:

· Cracked Frame*

· Defective Jack Pads

· Pump Controller

· Crack on Kitchen Stove Countertop

· RV Unit Not Square

· Crack in Bedroom

· Auto Level System Not Working*

· Bedroom Closet Door Coming Off, Wall Panels Loose

7

·     Bedroom Sliding Door Track Unsecured*

·     Hallway Crown Trim Not Flush*

·     Shower Wall Corner Not Flush*

·     Shower Door Aluminum Extrusion Screw Corroded*

·     Master Bedroom Top Molding over Window Passenger Side Not Flush*

·     Kitchen Stove Wallboard Blemishes*

·     Garage Bathroom Ceiling Fan Shroud Is Cracked*

·     Garage Bathroom Base Trim Behind Toilet Missing*

·     Driver Side Front Cap Separation, Silicone, Caulking*

·     Leveling System Door Gasket Not Installed Properly*

·     Leveling System Door Not Installed Properly*

·     Driver Side Leveling Jack Hose Rubbing on Tank Top*

·     Electrical "Butt" Connections Not Waterproof, Fire/electrical Hazard*

·     Leveling System Hydraulic Lines Rubbing Against Steel with No Grommet
      Protection Against Chaffing*

·     Satellite Prep Is Not Secure*

·     Distribution Center Door Not Centered*

· Driver Side Slide Out Front Window Sealant, Not Trimmed*

· Driver Side Slide Out Front Spring Stretched, Electrical Exposed to Weather and Chafing*

· Driver Side Slide out under Side Wipe Cut Short, Rear Trim Broken, Floor Trim Bulge*

· Exterior under Gooseneck Front and Upper Panel Fiberglass is Flexing, Bubbles, Screw and Bolt Failures and Separations; Master Bedroom Interior Front Closet Panels Have Separated to Wide Opening with Failures of Wall and Shelves; Front Cap Roof Separations; Shows Structural Frame Movement, Not Sound Condition*

· Driver Side Rear Corner Trim Twisted and Not Sealed*

· Garage Rear Door Seal Torn*

· Passenger Side Slide out Will Not Extend or Retract*

· Passenger Side Fender Skirt Cracked, Outside Entertainment Center Door Seal Cut Short and Separating, Compartment Open Hole Leading to Bedroom, Compartment Door Not Centered, Door Hinge Binding, Battery Compartment Door Not Centered, Inner Compartment Door Seal Does Not Fit Perimeter*

· Passenger Side, Battery Compartment, Hydraulic, Leveling, Jack Line, Rubbing

Steel Edge with No Grommet Protection Against Chaffing*

· Passenger Side Battery Compartment, Positive Cable Chafing with Steel Panel Hole with No Grommet Protection Against Chaffing, Electrical/fire Hazard*

· Toilet Wall Base Trim Not Secure*

· Bed Lift Is Missing Latches

· Crown Trim above Refrigerator Is Loose

· Screws by the Hitch Are Loose

· Electrical System and Breakers

· Bent Loft Ladder

· Generator Will not Run Right, Shuts down Intermittently, Electrical System*

· Air Conditioning System and Wiring

· Slide out Room System

· Kitchen Drawers Broken, Not Installed/assembled Right*

· Kitchen Drawer Broken Handle

· Black Tank Gauge Reads Always Full When Completely Empty*

· Legs on Kitchen Slide Side Go out with Front Legs*

· Frame Flexes When Hauling*

10

·     Water Lines Clogged with Plastic and Debris That Plugged Lines

·     Bedroom and Other Vents Do Not Blow Air Properly*

·     Bedroom Vent in Floor Has in it Debris, Wood Ships, Molding Pieces, Paperwork, Screws from Construction*

·     Carbon Monoxide Detector Often Goes Off*

·     One Burner on Stove Does Not Work*

·     Screws Falling out Everywhere, in and Outside Camper, Including in the Fenders and Frame Rails*

·     Bolts Falling out of Legs on Camper*

·     Fuel Tanks Splash Back Fuel When Trying to Fill*

·     Fuel Auxiliary Does Not Work*

·     Gray Tank and Black Valves Leak*

·     Cylinder on Leg Leaking Fluid*

·     Gas and Refrigerator System

·     Door Falling off the RV

·     Left Closet Falling Apart, Shelf Structural Failure*

·     Left Closet Sliding Door Refuses to Stay on Track*

11

- Rear Safety Latch on Garage Door Missing

- Frayed Cable at Kitchen Slide out Room Bottom Cable*

- Brakes Pull to One Side on Trailer*

- Driver Side Front Sidewall at Slide out Bottom Corner Cracks, Moves Up*

- All 3 Slide Room Systems

- Bedroom Vent Register Does Not Work

- Bedroom Slide out Tracks Are Broken

- Bunk Bed Frames Coming off the Walls

- Solar Panels Never Worked, Not Charging Batteries*

- Water Heater & LP System

- Random Screws and Bolts Coming out in Multiple Locations

- Safety Latches

- Futon Defects

- Bed Structure/system

- Sofa Bolts Loose, Stiles on Sofa Side Trim Is Loose

- Facia Missing on Sofa Slide out

12

- Facia Is Crooked on the Sofa Slide Out, Tearing Linoleum

- Glass Window in Garage Area Fell Out; Windows Falling out in Garage*

- Switch Mounted Improperly in Garage for Bunk Bets, Not Secure*

- Unsecure Wiring under Bed Making Contact with Slide out System, Fire Hazard*

- Cabinet Doors Not Mounted Equal*

- Seam Take Not Straight and Staple Holes Visible*

- Underside Cabinet Wood Cracked*

- Living Room Slide out Front Vertical Trim Coming Off*

- above Living Room Slide out Crown Molding Is Pealing*

- Living Room Slide Interior Ceiling Has Glue Residue and Visible Staples and Tape; at Rear Vertical Trim Coming Off*

- Kitchen Cabinets Separating*

- Slide out Base Wall Duplex Electrical Receptacle Not Secure*

- Entertainment Center Top Cabinet above Television Not Level and TV Not Level Either*

- Passenger Side Entertainment Slide Top Crown Molding Not Flush and Slide Ceiling Trim Not Secure, Front Slide out Seal Not in Contact with Sidewall*

13

- Step Facia Board Cut Short, Step Cut Short*

- Recliner Center Console Not Secure*

- Interior Seal Does Not Have Screws

- Exterior Molding on the Sofa Slide out Is Not Correct

- Front Not Sealed at the Hitch

- Sealant Missing All over the Interior and Exterior

- Gas Fridge and Water Heater Not Working on Propane Switch Over*

- Slide Bedroom Broke after First Use

- Rear Safety Latches, Screws on Rear Sofas Missing, Fell on Plaintiff

- Slide Seals, Living Room Slide Top Bowing*

- Fiberglass Warped Around 5th Wheel Screws Failed*

- Front Gooseneck Holding Water, Screws Separating or Breaking, Outside Shell Twisting and Separating from Frame*

- Frame under Garage Twisting, Breaking, Welds Broken Separating from Frame Rails*

- Passenger Side Kitchen Awning Holes*

- Closet Rod Fell down after First Time Used, Ripped out of Wall

14

- Auto Levels Are Set up Backwards, Levels Opposite Sides than Should*

- Leveling System Always Says Excessive Slope, Will Not Level*

- Front Cap Filled with Water During Rain*

- Bedroom Floor Vent Not Blowing Air Properly*, Had Construction Debris

- Front Slide out Failure, Not Repaired to Third Attempt*master Bedroom Closet Center Wall Panel Not Secure*

- Underside Covers Sagging, Has Open Area, Electrical Wiring Not Secured, Twisted Steel Cross Supports, Water Lines Hanging Unsecure, Fame Cross Members Twisted, Broken Welds, Bent Cross Members, Not Structurally Sound*

- Multiple Areas Where Metal Holes Had No Protective Grommets or Shielding*

- Bundled Energized Electrical Wiring Chafing on Frame Cross Member, Not Secure, Not Protected*

- Water Tank Heater Electrical Wire Not Secure*

- Frame Cross Member Top Perimeter Not Welded, Vertical Not Fully Welded*

- Hydraulic Hoses and Electrical Lines Go Through Body Holes with No Protection from Chafing on Steel, Fire/electrical Hazard*

- Refrigerator Missing Washer Spacers under Hinge*

· Failed Frame Cross Member Welds, Completely Detached from Frame*

· Several Bent And/or Buckled Cross Members in Frame*

· Frame Cross Member Welds Lack Perimeter Penetration; Others Failed*

· Belly Area Not Fully Enclosed or Sealed, Not Fitted Flush*

· Outrigger Between Axles 1 and 2 Broken*

· non-Moisture Proof Electrical Connectors Used in Moisture-laden Belly Area*

· Frame Cross Member Not Fully Welded Vertical and Horizontal*

· Top Frame Cross Member Failed Weld Penetration from Inside*

· Multiple Electrical, Fire, Safety Defects*

· Bedroom Slide Scraping Floor on Closet Side, Slide Will Not Go Out*

· Nightstand Broken*

· Carpet Behind Bedroom Slide Detached from Getting Caught Behind Slide*

· Bedroom Exhaust Residue Damage*

· Closet Damage*

· Cable Snapped on Kitchen Slide, Will Not Work*

· Crack on Wall Exterior Bedroom Slide Sidewall*

16

·     Bedroom/bathroom Sliding Door off Hinges after Every Pull*

·     Multiple Inside-outside Air Opening at Panel and Other Edges*

·     Radio Blue Tooth Will Not Work*

·     Outside Grill Hose Not Long Enough to Hook Up*

·     Side Skirt Brackets Broken and Missing, Causing Skirt and Fender Damage*

In the list above, those items marked as "*" are continuing defects that were never properly and/or fully repaired and continue to exist.

22.    Despite multiple and lengthy repair attempts, the RV is still defective with major defects that make it unusable and a danger to others on the road if it were attempted to be used, to say nothing for the multiple electrical system defects the fact that it is a fire hazard as it sits, and structurally unsound in multiple places and ways including the RV frame and the gooseneck areas.

23.    In addition to the above manufacturing defects, independent thermography testing established that the ceiling, roof, walls, and slide out rooms are all subject to substandard degrees of insulation values which indicates further failures and/or defects in the construction of this RV by Keystone RV.

17

24.     The RV has been in for Keystone authorized warranty repair and service attempts
multiple times for a laundry list of substantial, serious, safety, and other defects in the Keystone-
provided material and workmanship that is both baffling and unacceptable for what a reasonable
person would expect for a RV that should have been manufactured right in the first place.   The
RV has also been out of service by reason of Keystone authorized warranty repair attempts for an
unreasonable amount and length of time, and yet numerous major and substantial defects still
remain in this RV.

25.     When this RV was advertised, marketed, and being sold to Plaintiff, it was
represented that it was fit for its intended use and merchantable when, in fact, it was not. If the
RV had been properly inspected prior to its retail sale, RV Retailer Virginia, LLC would or
should have known that fact. The manufacturer, Keystone RV Company would or should have
known that fact. A reasonable opportunity to repair was given by Plaintiff to Defendant and a
reasonable number of repair attempts was given but the defects, problems and malfunctions in
this RV were never completely and fully repaired.

26.     At the time Plaintiff took delivery of and accepted the RV she was unaware of the
defects and nonconformities because of Defendant's and its selling agent's representations and
promises and the difficulty of discovery and because some of the problems had appeared after
the purchase of the vehicle.

27.    Within a reasonable time after realizing the existence of defects, problems and/or malfunctions, the Plaintiff took the vehicle to the Keystone authorized dealer to have the nonconformities corrected and provided notice of the defects, malfunctions, and problems to Keystone. A proper and complete repair of the chassis is not achievable.

28.    Furthermore, the nonconformities in the RV's chassis have not been corrected after 128 days in the shop for repair, all of which occurred during the term of the warranties that came with the RV.

29.    Defendant and RV Retailer received written notice of the nonconformities and revocation of acceptance of the RV by certified mail sent December 15, 2023, and by certified mail and email to Keystone and to RV Retailer by ordinary mail, all on December 27, 2023, and also to RV Retailer dba Blue Compass RV and dba RV Outlet USA in Ringgold, Virginia, and to RV Retailer Virginia, LLC corporate office in Fort Lauderdale, Florida and to RV Retailer Virginia, LLC care of its registered, statutory agent CT Corporation System in Glen Allen Virginia, all on December 27, 2023.

30.    The defects and nonconformities continue to exist and substantially impair the vehicle's use, market value, and safety to the Plaintiff, who has used it for her personal use, and who has properly used and serviced the vehicle while it has been in her possession to the degree that any needed any such service and/or maintenance.

19

31.     At this time, the vehicle is in substantially the same condition as when it was delivered to the Plaintiff, except for its remaining defects and repair attempts and repairs for damages done to the vehicle by the Defendant's agents or authorized repair facilities, and damages caused by the defects and nonconformities and damages made by Defendant and its respective agents, and representatives.

32.     The vehicle, as delivered and as accepted, has a substantially reduced value to the Plaintiff because of its defects, problems, malfunctions, and non-conformities.

33.     In her letter of December 15, 2023, the Plaintiff revoked her acceptance of the RV and asked the Defendants to return the purchase price and all other damages sustained and recoverable under Virginia law, since all of the defects had not been and could not be fixed in a timely manner, if at all. Keyston RV has not agreed to do so and/or has refused or otherwise failed to timely agree to do this.

34.     One of the purposes of Defendant's respective warranties was to get the RV fixed within a reasonable amount of time and within a reasonable number of repair attempts if a nonconformity arose, but the essential purpose has failed because it failed to do so.

35.     Because of the many defects in the subject vehicle, the vehicle was not merchantable or fit for its normal use when RV Retailer delivered it to Plaintiff and RV Retailer either knew or should have known such at the time of such delivery.

36.     Plaintiff contacted Defendant and RV Retailer multiple times to attempt to resolve her ongoing issues and this dispute, without success. As a result, Keystone  RV and its authorized dealer received multiple notices and had multiple opportunities to cure or repair the RV and failed to do so.

37.     Defendant has breached its express and/or implied warranties to Katherine Shore. The RV sold to Plaintiff is an RV that was not built correctly and was not fixed correctly and the laundry list of defects, malfunctions, and problems and the number of days the RV spent out of service, each, substantially impairs the RV's use, market value, and safety to Plaintiff and to any other reasonable person. Plaintiff reported these non-conformities to Defendant and/or one or more of its representatives or authorized dealers within a reasonable time of discovery, but successful, necessary, and adequate repairs have either been refused or been unable to be completed to repair the many substantial and significant defects in this RV within a reasonable amount of time or a reasonable number of attempts.

## COUNT I
## BREACH OF WARRANTY

38.     The allegations and claims of the above paragraphs are incorporated as if fully stated herein.

21

39      This claim is for breach of express and implied warranties and contract of

warranty by the Defendant for Plaintiff's damages.

40.     As a result of the above facts and allegations and failure to repair the vehicle in a

reasonable period of time the Keystone RV breached its contract, agreements, and warranties

with the Plaintiff causing her financial loss damages since the vehicle was not worth what was

paid for it at the time of sale and was not delivered to her in merchantable condition and was not

fit for its intended use at the time of sale.

41.     At all times relevant, RV Retailer was a supplier and merchant and an authorized

agent and representative of Keystone RV Company. RV Retailer was authorized by Keystone

RV Company to act for it in all aspects related to the sale and warranty repair work performed or

attempted on the subject vehicle. Repair attempts on the RV were made by Defendant and RV

Retailer and by other agents and representatives of one or both of these entities.

42.     At all times the relevant RV Retailer was an authorized agent and representative

of Keystone for warranty repair purposes. RV Retailer was authorized by Keystone to act for it

in all aspects related to the sale of the RV, explanation of its warranties, and warranty repair

work performed or attempted on the RV.

22

43.    In all respects, the Plaintiff substantially if not completely performed Plaintiff's obligations under the RV's warranty from Keystone RV however Keystone, nor its agent for warranty repair purposes, did not perform its obligations, as set forth herein.

44.    Because of the contract and warranty-covered defects, the Plaintiff contacted the Defendant and its authorized dealer giving notice of the numerous defects, and when requested otherwise delivered the RV to the authorized dealer, representative and/or agent of one or both Defendants.

45.    Keystone's written warranty on the subject vehicle proclaims that Keystone basic warranty warrants the vehicle to the owner for a period of 12 months from delivery, and 36 months for structural defects to the first owner, and that defects in materials and workmanship will be repaired or replaced. The vehicle in this case had warranty defects under both the basic Keystone written warranty and under the Keystone structural written warranty and under implied warranties.

46.    Keystone's warranty on the RV's chassis warrants to the owner for a period of 36 months from delivery to the first owner that defects in materials and workmanship will be repaired or replaced.

47.    There are two basic portions of a vehicle like the RV: the chassis, and "the box" which is the body structure mounted on the chassis by Keystone. Despite Keystone RV

23

Company's warranty against defects on the non-chassis portion of the RV, the portion of the RV that Keystone RV Company warranted was plagued with numerous and substantial defects in materials and workmanship that are the fault of Keystone RV Company or negligent repairs made by its authorized dealer, Defendant RV Retailer. The same is true of the chassis which was warranted by Keystone.

48.    Keystone RV Company promised the Plaintiff that a "repair or replacement" would be provided to her if a defect was found. Even though several defects were found, and Keystone RV Company was given numerous chances to remedy the defects, Keystone RV Company failed to repair those defects in the RV and failed to replace the RV, despite numerous complaints, opportunities, and multiple durations of time to comply with Keystone RV Company's obligation.

49.    Keystone also warranted the chassis, and despite its promise to repair that and chassis defect in materials or workmanship in its warranty, it and its authorized dealer failed to do so in a reasonable period of time.

50.    Despite Defendants' joint and/or several warranty obligations, when the Plaintiff complained of the inability of these Defendants to repair the vehicle's defects, the Defendants did not repair, replace, or repurchase the subject vehicle.

51.    As a result of the above, each Defendant breached its express and/or implied warranties and/or contract of warranty to the Plaintiff.

24

52.     Instead of performing as represented, the Defendant did not repair all defects in the vehicle once and for all time. In short, the defects were not repaired, Plaintiff lost all confidence in the reliability and quality of the RV and she lost all confidence in the Defendant's ability to repair the RV.

53.     As a result of its inability to repair the RV's defects, one or more of Defendant's warranties failed of its essential purpose and any limitations contained within the warranty are null and void and Plaintiff is entitled to all applicable legal and equitable remedies in law.

54.     Through its advertising and otherwise, the Defendant represented that the RV was fit for the purpose for which it was designed, that it was a safe and suitable vehicle for its intended designed use, reliably operable for private transportation and recreational use and the Plaintiff acquired the vehicle in reliance upon the belief that the Defendants possessed a high degree of skill and judgment.

55.     Through its advertising and otherwise, the Defendant represented that the recreational vehicles which it sold were of merchantable quality, fit and in proper condition for the ordinary use for which such vehicles are designed and used, and the Plaintiff relied on such, but the RV was not of merchantable quality.

56.     These defects, malfunctions, problems, and non-conformities of the RV severely and substantially impaired its use, safety, and market value to the Plaintiff.

57.     The failure of the Defendants to timely fix the vehicle's defects has caused the

Plaintiff to lose confidence in the reliability of the RV and in the ability of Defendants to repair

the RV's defects.

58.     The Plaintiff provided Defendant with a reasonable opportunity and/or a

reasonable number of opportunities and duration of time to repair the subject vehicle, but they

have neglected, failed, refused or otherwise been unable to do so.

59.     As a result of the above facts, the Defendant breached its agreements,

representations, promises, warranties, and contract of warranty with respect to the subject

vehicle.

60.     One or more of the defects, malfunctions, problems, and non-conformities with

the RV were covered under the terms of the Defendant's agreements, representations, promises,

warranties and/or contract of warranty, and the Defendant failed to repair the vehicle's defects in

a reasonable amount of time, thereby diminishing the use, safety, and market value of the

vehicle.

61.     Defendant had notice of its breach of warranty and/or contract of warranty,

breaches of Keystone RV Company's and RV Retailer's express and implied representations,

promises, warranties, contract of warranty and agreements and of the defective condition of the

RV within a reasonable time.

62.     The Plaintiff suffered and shall continue to suffer actual, incidental, and consequential damages as a direct and proximate result of the inability or other failures of each Defendant to repair, replace the vehicle, or refund its price in an amount that shall continue to increase, including insurance, title, taxes, loan interest and more.

63.     Based upon Defendant RV Retailer's breach of contract by selling to the Plaintiff the RV which is substantially impaired to her and which she has revoked her acceptance of pursuant to Virginia Code §8.2-608, and the breach of warranties and contract obligations by one and/or both Defendants, the Plaintiff is entitled to statutory and other damages, remedies, and relief as deemed proper and lawful by the Court, for more than $75,000 and in such amount as may be proven at trial, plus attorney fees and costs. As a direct and proximate result of the above, the Plaintiff has been damaged in an amount in excess of $75,000 for which the Defendant is responsible.

## COUNT TWO

## BREACH OF EXPRESS AND IMPLIED WARRANTIES UNDER THE MAGNUSON-MOSS WARRANTY ACT

64.     Plaintiff incorporates the allegations of the above paragraphs as if alleged herein.

65.     Plaintiff is a "consumer" as defined in 15 U.S.C. §2301 (3); Keystone RV Company is a "supplier" and "warrantor" as defined in 15 U.S.C. §2301 (4) and (5); and the RV is a "consumer product" as defined in 15 U.S.C. §2301 (1).

27

66.     Defendant does not have dispute resolution mechanism which meets the requirements of 16 C.F.R. Part 703, promulgated by the Federal Trade Commission pursuant to §2310(a)(2) of the Magnuson-Moss Warranty Act.

67.     Defendant failed to comply with the procedural rules established by 16 C.F.R §703.2 (e) when written notice of this dispute was mailed to it by Ms. Shore thus she was not obligated to go through any informal dispute settlement procedure as noted in 15 USC §2310(a)(3) of the Magnuson Moss Warranty Act.

68.     The vehicle was manufactured after July 4, 1975 and an express Limited Warranty and an implied warranty of merchantability were given to Plaintiff from Keystone RV Company and implied warranties were given to Plaintiff by Defendant as a part of the purchase, warranties which meet the definition of "written warranty" and "implied warranty" contained in 15 U.S.C. §2301 (6) and (7).

69.     These Warranties have failed of their essential purpose and Defendant violated the Act due to its inability and/or refusal to repair or replace the nonconformities within a reasonable time, and due to its refusal to provide the Plaintiff with a refund.   15 U.S.C. §2304 (a)(1) and (4).

70.     Defendant also breached its warranty of merchantability since the RV, in view of the nonconformities and/or their inability to correct them, was not fit for the ordinary purpose for which the vehicle was used. 15 U.S.C.§§2308, 2310 (d).

28

71.    As a direct and proximate result of the above, the Plaintiff has been damaged in an amount in excess of $50,000 for which one or both Defendants are responsible, individually, jointly and/or severally.   15 U.S.C. §§2304(a) and 2310(d).

**COUNT THREE**
**VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT**

72.    Plaintiff incorporates the allegations of the above paragraphs as if alleged herein.

73.    As individually defined under the Virginia Consumer Protection Act, the Plaintiff is a "person," and a "consumer," Defendant is a "supplier" and a "merchant" and the subject vehicle is "goods," and the parties each engaged in a "consumer transaction" with Plaintiff.

74.    Keystone failed to correct the vehicle nonconformities after a reasonable number of repair attempts and/or after a reasonable repair opportunity and/or amount of time, which has impaired the use, market value, and safety of the vehicle to the Plaintiff.

75.    Defendant has refused or otherwise not accepted the Plaintiff's demand for revocation of acceptances and/or damages and/or a refund.

76.    Before, during, and or after a consumer transaction between the parties Defendant, itself or thru its selling agent, RV Retailer, willfully committed multiple acts and omissions of deception, false pretense, false promise, and/or misrepresentation in violation of the Virginia Consumer Protection Act, Va. Code Ann. 59.1-196 et seq. Such acts include, but are not limited to any one or more or combination of the following:

29

·   misrepresenting that the goods or services had certain characteristics, uses and/or benefits, including that the services had been performed and performed properly, that the goods were merchantable and/or fit and/or suitable for their intended purpose;

·   misrepresenting that the goods and/or services were of a quality construction in both material and workmanship;

·   using in any contract any waiver that is void or unenforceable under any otherwise applicable laws of the Commonwealth;

·   using any other deception, false pretense, false promise, or misrepresentation in connection with a consumer transaction;

·   entering into a written agreement with a consumer to resolve a dispute that arises in connection with a consumer transaction and failing to adhere to the terms and conditions of such agreement;

·   providing a written document it calls a warranty which in fact provides inadequate and/or deficient remedies in case of breach;

·   deliberately concealing it the sale and distribution of this RV and other like it that it may be, and/or was and/or was likely to be defective at the time of delivery to the consumer purchaser;

30

- requiring a retail seller of a consumer product to obtain a written acknowledgment by the consumer purchaser of the product that they had received and read the manufacturer's written warranty without requiring the retail seller to actually provide the manufacturer's written warranty to the consumer and to give notice to the consumer prior to entering into the purchase agreement that the manufacturer's written warranty was available to the consumer purchaser to review prior to the sale to the consumer;

- distributing a consumer good costing more than $50,000 in interstate commerce for retail sale to consumers while knowing that the goods may be subject to repair prior to retail delivery, in order to make the goods merchantable, without instructing the retail seller of its goods to notify the consumer purchaser prior to entering into the purchase agreement that the goods may have been subject to repair in order to make the goods merchantable prior to retail sale;

- selling a consumer product to a retail seller that it knew would sell the product in a distant forum under terms that required the consumer to litigate a dispute with the manufacturer in the home state of the manufacturer instead of at the point of sale while knowing that doing so would and/or might inhibit the consumer from enforcement and/or pursuit of their legal rights against the manufacturer.

31

77.    As a direct and proximate result of the above willful violations, the Plaintiff has been damaged in an amount in excess of $75,000 for which Defendant is responsible, and pursuant to Va. Code §59.1-204, she is entitled her to her actual damages, statutory damages, and exemplary damages, or, even if the violations are deemed unintentional, pursuant to per Virginia Code §59.1-207, Plaintiff is entitled to restitution of her damages and legal fees.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff demands judgment against the Defendant as follows:

1.    On Count I and II, compensatory damages and relief as deemed proper and lawful in an amount that exceeds $75,000.00 and in such greater amount as may be proven at trial.

2.    On Count III, all compensatory, statutory, and exemplary damages for each violation of the Virginia Consumer Protection Act pursuant to Virginia Code §§ 59.1-204 and 207 against Defendant.

3.    Award Plaintiff's costs, pre-judgment and post-judgment interest, and reasonable attorney's fees in accordance with Virginia Code §§ 59.1-204 and 207 the Virginia Consumer Protection Act, and any such other relief the Court deems just, equitable and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

**KATHERINE SHORE ,**

/s/  John Cole Gayle, Jr._____
John Cole Gayle, Jr., Esquire
VSB No. 18833
THE CONSUMER LAW GROUP, P.C.
1508 Willow Lawn Drive, Suite. 220
Richmond, VA   23230
804-282-7900 - Phone
804-673-0316 - Fax
jgayle@theconsumerlawgroup.com

Dated: January 29, 2024