CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED
10/9/2025
LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| KATHERINE SHORE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:24-cv-00003 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| KEYSTONE RV COMPANY, *et al.*, | ) | By:  Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendants. | ) | |

In January 2024, Plaintiff Katherine Shore ("Shore") filed a complaint against Defendants Keystone RV Company ("Keystone") after purchasing a defective 2022 Keystone Fuzion ("the RV") that Keystone warranted, but could not repair, within a reasonable amount of time. (ECF No. 1.) In August 2024, Shore filed an amended complaint, adding RV Retailer Virginia, LLC ("RV Retailer" and, together with Keystone, "Defendants") as a defendant. (ECF No. 36.) In June 2025, the parties reached a settlement, resolving all claims except for Shore's request for attorneys' fees and costs. (ECF Nos. 70, 77.) This case is now before the court on Shore's motion for attorneys' fees and costs. (ECF No. 73.) The parties do not dispute that Shore is entitled to reasonable attorneys' fees; they only dispute the amount. Having reviewed the record, the parties' briefings, and applicable law, the court finds that Stone is entitled to $69,487.50 in attorneys' fees and $345.93 in costs.

## I.  BACKGROUND

In July 2022, Shore purchased a 2022 Keystone Fuzion from Keystone; as part of the purchase agreement, Defendants promised to replace any covered defect in the RV within the warranty period. (Am. Compl. ¶ 15 [ECF No. 36].) The RV's total sales price was $109,853.

(*Id.*) Shore paid $18,000 down and financed the balance of the RV's purchase price. (*Id.* ¶ 15 & Ex. 2.) This finance contract required her to pay U.S. Bank, N.A., 240 monthly payments of $825.83 for a total finance charge of $106,346.20, with all payments for the RV totaling $198,199.20. (*Id.*)

Shore soon noticed that the RV had significant defects and brought it to the Keystone warranty-authorized repair shop in December 2022 and again in July 2023. (*Id.* ¶¶ 16–20.) The RV spent a total of 128 days in the repair shop, but never fully operated without defects. (*Id.* ¶¶ 20–21.) In particular, the RV had severe structural issues, including a cracked frame (which the repair shop ultimately informed Shore it could not fix), various electrical issues, leaks, and safety defects. (*See id.* ¶ 22.) In December 2023, Shore revoked her acceptance of the RV and asked Defendants to return the purchase price and all other sustained and recoverable damages. (*Id.* ¶ 33.) When Defendants failed to do so, Shore sued, alleging breach of warranty and revocation of acceptance (Count I), breach of express and implied warranties under the Magnuson-Moss Warranty Act ("MMWA") (Count II), and violation of the Virginia Consumer Protection Act ("VCPA") (Count III).

After nearly a year and a half of litigation, the parties reached a settlement on June 13, 2025. Defendants agreed to repurchase the RV from Stone for $160,000. (Settlement [ECF No. 77].) The parties stipulated that Shore "is a prevailing party under all claims in this case and is entitled to recover her reasonable attorney fees and litigation costs in this matter, by way of this stipulation and pursuant to the Magnuson Moss Warranty Act and the Virginia Consumer Protection Act." (Stipulation [ECF No. 71].) Shore filed the instant motion for attorney's fees (ECF No. 73) and accompanying memorandum in support (ECF no. 74)

requesting a total of $135,315.36 in attorneys' fees and litigation costs. Defendants countered, arguing that Shore's reasonable attorneys' fees and costs total $68,938.43. (ECF No. 84.)

## II.  ANALYSIS

The parties agreed in their Stipulation that Shore is entitled to recover reasonable attorneys' fees and costs, and the MMWA and the VCPA allow a prevailing consumer to recover reasonable attorney's fees and costs. *See* 15 U.S.C. § 2310(d)(2) (stating that a prevailing consumer may "recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action[.]"); Va. Code. Ann § 59.1-204(D) (providing that in an action where parties settle, the court may consider whether the plaintiff "shall be awarded reasonable attorneys' fees and court costs").[1]

To determine a reasonable award of attorney's fees and costs, the court follows the three-step process under *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). First, the court begins with a calculation of the lodestar amount—the "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). The court may also consider and apply any of the 12 factors set forth in *Johnson v. Ga. Highway Express*, 488 F.2d 714, 717–19 (5th Cir. 1974), and adopted by the Fourth Circuit in *Barber v.*

---

[1] Under the American Rule, "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010) (cleaned up). Contravening the American Rule requires "explicit statutory authority." *Baker Botts, LLP v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 602 (2001)). Both the MMWA and the VCPA provide that explicit authority to deviate from the American Rule and, even if they did not, the parties agree that Shore is entitled to attorneys' fees and costs. They only dispute the amount recoverable.

*Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir. 1978), to adjust the lodestar as necessary. *Grissom*, 549 F.3d at 320–21. The *Johnson* factors include:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Spell v. McDaniel*, 824 F.2d 1380, 1402 n.18 (4th Cir. 1987). "[T]he court need not address all twelve factors independently, because 'such considerations are usually subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.'" *Perry v. Isle of Wight County*, 311 F. Supp. 3d 751, 758 (E.D. Va. Apr. 26, 2018) (quoting *Freeman v. Potter*, No. 7:04-cv-276, 2006 WL 2631722, at *2 (W.D. Va. Sep. 13, 2006)).

After calculating the lodestar, the court must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *McAfee*, 738 F.3d at 88 (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009)). "Finally, the court should award 'some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.'" *Id.* (quoting *Robinson*, 560 F.3d at 244).

**A.    Reasonable Attorney's Fees**

Shore requests a total of $94,370 in attorneys' fees, with $63,605 for local counsel John Gayle of the Consumer Law Group and $30,765 for several attorneys and staff at Burdge &

Wells Law Office. (Pl. Br. in Supp. of Mot. for Fees at 16–17.) Below is a breakdown of the requested attorneys' fees:

| Name | Position | Rate(s) | Total Billable Hours | Total fee |
|---|---|---|---|---|
| John Gayle | Attorney, Consumer Law Group | $700/$500[2] | 94.30 | $63,605 |
| Ronald Burdge | Attorney, Burdge & Wells | $565 | 26.80 | $15,142 |
| Elizabeth Wells | Attorney, Burdge & Wells | $450 | 26.90 | $12,105 |
| Scarlett Steuart | Attorney, Burdge & Wells | $395 | 5.40 | $2,133 |
| Aaron Gonzalez | Attorney, Burdge & Wells | $200 | 14.50 | $2,900 |
| Alana James | Paralegal, Burdge & Wells | $150 | 4.00 | $606.00 |
| Linda Montgomery | Business/ Settlement Manager, Burdge & Wells | $125 | 0.10 | $12.50 |
|  |  |  | TOTAL | $94,370 |

1. **Reasonable Hourly Rate**

The first step in the court's lodestar calculation is a determination of the reasonableness of the hourly rate. The reasonable hourly rate must be determined relative to the "prevailing market rate of attorneys' fees in the relevant community" for similar work. *Robinson*, 560 F.3d at 244. The burden is on the fee applicant to "establish the reasonableness of a requested fee" by producing "satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Grissom*, 549 F.3d at 321 (quoting *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)). Satisfactory specific evidence

---

[2] Attorney Gayle billed 10.6 hours that he spent on this attorneys' fee petition at $500; he billed $700 for the time he spent on the case pre-settlement. (*See* Pl. Br. in Supp. Ex. 2-B [ECF No. 74-16].)

includes "affidavits reciting the fees of counsel with similar qualifications, information concerning fee awards in similar cases, and/or specific evidence of counsel's billing practice." *Shelton v. Marshall*, No. 5:22-cv-042, 2024 WL 2155263, at *2 (W.D. Va. May 13, 2024) (quoting *Freeman*, 2006 WL 2631722 at *4).

In support of the requested rates, Shore provided the resumes and time records of all attorneys on the case; affidavits from Attorney Gayle, Attorney Wells, and Thomas Domonoske, a long-time consumer attorney whose practice is based in the Eastern District of Virginia; and a Consumer Law Fee Survey prepared by Attorney Burdge in 2019. Defendants argue that the rates requested for Attorneys Gayle and Burdge are unreasonable primarily because Mr. Domonoske admitted that his normal hourly rate is $700 in the Eastern District of Virginia and that, in the Western District of Virginia, he requests and receives $500. (Def. Br. at 6 [ECF No. 84]; Domonoske Decl. ¶ 14 [ECF No. 74-17].) Accordingly, Defendants contend that Shore did not meet her burden of demonstrating that $700 and $565 were, respectively, reasonable hourly rates for Attorneys Gayle and Burdge in the local market, and they request that the court set the reasonable rate for Attorneys Gayle and Burdge at $500 (representing "the top market rate for experienced consumer law attorneys in this district"). (Def. Br. at 6.)

The court agrees with Defendants that Shore did not meet her burden of establishing $700 and $565 as reasonable rates for highly experienced consumer law attorneys in *this* market. Though Defendants do not argue that the rates for Attorneys Wells and Steuart are unreasonable, the court also finds that Shore did not meet her burden of establishing $450 and $395 as reasonable rates. While the affidavits and resumes provide that Attorneys Gayle

- 6 -

and Burdge each have over four decades of experience and success in consumer protection and "lemon" law (and that Attorneys Burdge and Wells have ample experience in the even more specialized field of RV "lemon" law) and are deserving of top-of-market rates, they do not provide sufficient evidence that their requested rates are reasonable top-of-market rates in the Western District of Virginia. Likewise, affidavits and resumes show that Attorneys Wells and Steuart have, respectively, 21 and 10 years of experience in consumer law, but not that their requested rates are reasonable relative to the local market.

Attorney Wells stated in her affidavit that her normal hourly rate for RV cases in the Northern District of Indiana is $450, and the example she cited of the fee she received was a 2023 Northern District of Indiana case, where the court found $350 to be a reasonable rate. (Wells Aff. ¶¶ 12, 24 [ECF No. 74-2].) As for Attorney Steuart, Attorney Wells stated simply that her normal rate in the Northern District of Indiana is $395 and that it is her opinion that $395 is a reasonable rate. (Wells Aff. ¶ 33.) She similarly stated that Attorney Burdge's normal rate in the Northern District of Indiana is $565 and that she believed it is a reasonable rate. (Wells Aff. ¶ 32.) Additionally, Attorney Gayle stated in his affidavit that he has "no recent legal fee rate approvals by state or federal judges" since all his recent cases have settled before trial or had fee awards decided by juries in state court. (Gayle Aff. ¶ 21 [ECF No. 74-14].) Further, he states simply that he is familiar with the market rates "for the Virginia market" and that the requested fees are reasonable. (Gayle Aff. ¶¶ 23–24.) Finally, in explaining why he believed that $700 is a reasonable rate for Attorney Gayle, Mr. Domonoske cited two cases in the *Eastern* District of Virginia where the court upheld similar rates in consumer-protection

cases.3 (Domonoske Decl. ¶ 5.) Mr. Domonoske stated that Attorney Gayle's $700 rate is reasonable for his experience in a specialized area of law *"[b]ased on his location in Richmond*[,]" but that in the Western District of Virginia, Mr. Domonoske regularly charges and receives $500. (Domonske Decl. ¶¶ 14, 18 (emphasis added).) That is not enough. *See Minnix v. Sinclair Television Grp.*, 7:23-cv-00091, 2024 WL 1885568, at *3 (W.D. Va. Jan. 24, 2024) (finding that a statement that rates are customary in the local community "upon information and belief" without any other information in support "is not helpful" to the court's determination).

Recent cases addressing reasonable attorneys' fees in this district are instructive, even if not directly on point. In two recent civil, but not consumer-protection, cases, this court found that $400–$450 were reasonable rates for partners. *Lamb v. Liberty Univ., Inc.*, No. 6:21-cv-00055, 2024 WL 1315919, at *3 (W.D. Va. Mar. 27, 2024) (finding that "an hourly rate of $400 for partners [and] $250 for associates" is reasonable); *Sines v. Kessler*, No. 3:17-cv-00072, 2023 WL 2388050, at *16 (W.D. Va. Mar. 7, 2023) (finding $400–$450 for partners and $225 for associates reasonable). In a consumer case, this court found that $300 was a reasonable rate for an attorney with 20 years of experience in consumer law, and that a higher rate was not reasonable because the case was neither large nor complex like the civil cases where the court allowed for higher rates. *Shelton*, 2024 WL 2155263, at *3. Notably, however, the defendants in *Shelton* never appeared or responded to the plaintiff's motion, so the case ended in a default judgment. *Id.* at *1. Therefore, *Shelton*—though more comparable in subject matter

---

[3] Both cases Mr. Domonoske cited arose out of Alexandria division of the Eastern District of Virginia, and the court used the "*Vienna Metro* matrix" to determine customary rates for Northern Virginia attorneys. *Bowden v. Forest River, Inc.*, No. 1:18-cv-1578, 2020 WL 3584792, at *2 (E.D. Va. June 30, 2020); *Garcia v. Mega Auto Outlet*, No. 1:20-cv-945, 2021 WL 1792074, at *2 (E.D. Va. May 5, 2021). The *Vienna Metro* matrix "provides for fees ranging from $505.00-$820.00 for attorneys with over twenty[] years of experience." *Garcia*, 2021 WL 1792074, at *2. The *Vienna Metro* matrix, however, does not represent the market rates in the Western District of Virginia.

than *Lamb* and *Sines*—is not a perfect match because it was more straightforward and fewer steps of litigation were involved than in the instant matter. Still, this matter did not involve many parties; it was not highly complex; it did not involve a novel question of law; and, as the affidavits noted, the attorneys here regularly handle similar RV or "lemon" cases. Although there were some time-consuming aspects (*see* Gayle Aff. ¶ 11), the case did not advance far into litigation before the parties settled; in fact, this court had not yet ruled on the motion to dismiss. But considering the depth of Gayle's, Burdge's, Wells's, and Steuart's experience in the consumer-law field, the court finds that rates of $450 for Gayle and Burdge, $400 for Wells, and $300 for Steuart are reasonable top-of-market rates in the Western District of Virginia. The court finds that all other requested rates are reasonable.

**2. Reasonable Hours Expended**

The court must next determine the reasonableness of the number of hours Shore's attorneys expended on the lawsuit. The fee applicant must also "submit evidence supporting the hours worked and rates claimed" and "make a good[-]faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983). The court must also exclude "hours that were not reasonably expended." *Id.* at 434 (cleaned up). Defendants argue only that the 14.7 hours billed by Attorneys Gayle, Burdge, and Wells for communications about the case were unreasonable. (Def. Br. at 7.) In her Reply Brief, Shore concedes that there were a total of five entries where both co-counsel billed for strategizing sessions, totaling two hours. (Reply Br. at 2 [ECF No. 88].)

Though courts in this circuit have reduced hours for inter-office communications, *see, e.g.*, *Perry*, 311 F. Supp. 3d at 759, none of the hours billed here are for communications between counsel at Burdge & Wells. Instead, they involve communications between attorneys at Burdge & Wells and Attorney Gayle, who works at a different firm. (Pl. Br. in Supp. Ex. 1-F [ECF No. 74-8].) In a similar RV breach of warranty case, the court found that the 16.97 hours spent on emails between co-counsel were reasonable because it was "unsurprising" that lead counsel communicated with local counsel by email. *Bowden v. Forest River, Inc.*, No. 1:18-cv-1578, 2020 WL 3584792, at *4 (E.D. Va. June 30, 2020). The same rationale applies here. Moreover, the timesheets are adequately specific as to the tasks performed by each attorney and staff member, and each entry establishes the relevance of each task to the case, including the drafting and reviewing of the complaints and motions, developing case strategy, and preparing for mediation. *See Shelton*, 2024 WL 2155263, at *4. Accordingly, the court will apply a reduction only for the two hours of overlap from Attorney Gayle's hours, so the total hours reasonably expended among all attorneys and staff who worked on this case is 170 hours.

The lodestar calculation is therefore: 92.3 hours at $450 (Attorney Gayle), 26.8 hours at $450 (Attorney Burdge), 26.9 hours at $400 (Attorney Wells), 5.4 hours at $300 (Attorney Steuart), 14.5 hours at $200 (Attorney Gonzalez), 4 hours at $150 (Paralegal James), and 0.1 hours at $125 (Business Manager Montgomery). The total calculation is $69,487.50.

### 3. Further Reductions and Total Lodestar Calculation

No further reduction is warranted under the second and third steps of *McAfee*. The parties stipulated that Shore "is a prevailing party under all claims in this case." (ECF No. 71.)

As a result, there are no unsuccessful claims in this case. Notably, Keystone agreed in the parties' settlement to repurchase the RV from Shore for $160,000 (ECF No. 77)—over 80 percent of the total payments Shore owed for the RV under the purchase agreement and about $50,000 more than the RV's sales price. (*See* Am. Compl. ¶ 15.) Shore is therefore entitled to attorneys' fees totaling $69,487.50.

**B.    Expert Witness Fees and Other Costs**

Shore requests $40,945.36 in total litigation costs, with $40,599.43 in expert witness fees and $345.93 in other litigation costs, including the filing fee for *pro hac vice* admission, research costs, and postage. (Pl. Br. in Supp. Ex. 1-K [ECF No. 74-13].) Shore contends that expert witness costs here are recoverable as "'costs and expenses' . . . based upon a plain reading of the MMWA and relevant caselaw." (Pl. Br. in Supp. at 18 (quoting 15 U.S.C. § 2310(d)(2)).) Defendants argue that an award of expert witness fees requires specific statutory authority by Congress and that there is no such authority in the MMWA. (Def. Br. at 9–10.) The court agrees with Defendants.

The American Rule applies to expert fees as well—that is, the fee is not recoverable unless explicitly provided for in the statute under which the fee applicant seeks relief or in a contract between the parties. *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 86 (1991) (superseded by statute on other grounds). Congress enacted a general "costs" statute, codified at 28 U.S.C. §§ 1821 and 1920, which defines "what the term 'costs' encompasses in the subject-specific federal statutes that provide for an award of costs" and "create a default rule and establish a clear baseline against which Congress may legislate." *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 338–39 (2019). The Supreme Court has consistently held that "[a]

statute awarding 'costs' will not be construed as authorizing an award of litigation expenses beyond the six categories listed in §§ 1821 and 1920,[4] absent an explicit statutory instruction to that effect." *Id.* at 340; *see, e.g.*, *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 439 (1987) (requiring "explicit statutory authority" for reimbursement for expert witness fees); *Casey*, 499 U.S. at 86; *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 298 (holding that prevailing party could not recover expert fees where statute made no mention of such fees); *Rimini St.*, 586 U.S. at 341 (holding that an expert fee award is not warranted because the Copyright Act does not explicitly authorize expert witness fees). As a result, "costs is a term of art that generally does not include expert fees." *Murphy*, 548 U.S. at 297 (cleaned up).

Unlike "costs," "expenses" is not a term of art that is limited by the list set out in 28 U.S.C. § 1920. *See id.* ("The use of this term of art, rather than a term such as 'expenses,' strongly suggests that § 1415(i)(3)(B) was not meant to be an open-ended provision[.]"). Nonetheless, the MMWA's use of the word "expenses" in providing for recovery for "the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended)" does not provide the requisite explicit authority for an award of expert-witness fees. The Supreme Court recently held that Section 145 of the Patent Act, which provides that the applicant must pay all expenses of the proceedings, does not "invoke attorney's fees with the kind of 'clarity we have required to deviate from the American Rule.'" *Peter v. Nantkwest,*

---

[4] The six categories of taxable costs enumerated by 28 U.S.C. § 1920 are: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts obtained for the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of materials necessary for the case; (5) docket fees; and (6) compensation of court-appointed experts and interpreters, as well as salaries, fees, expenses, and costs of special interpretation services. 28 U.S.C. § 1821 provides for payment of various fees to a witness "in attendance at any court of the United States" or "before any person authorized to take his deposition."

*Inc.*, 589 U.S. 23, 30 (2019) (quoting *Baker Botts, LLP v. ASARCO LLC*, 576 U.S. 121, 126 (2015)). The Court explained that "[d]efinitions of 'expenses' provide scant guidance[,]" noting that though the definitions of the term "are capacious enough to include attorneys' fees, the mere failure to foreclose a fee award 'neither specifically nor explicitly authorizes courts to shift fees.'" *Id.* at 31 (quoting *Baker Botts*, 576 U.S. at 128); *see Expense*, *Black's Law Dictionary* (12th ed. 2024) ("An expenditure of money, time, labor, or resources to accomplish a result"); *Expense*, *Merriam-Webster Dictionary* ("a financial burden or outlay").

That same logic applies here. *See Hyatt v. Hirshfeld*, 16 F.4th 855, 862 (Fed. Cir. 2021) (applying the reasoning in *Nantkwest* to expert fees, even though expert fees were historically awarded under the relevant statute). The MMWA does not define "expense," *see* 15 U.S.C. § 2301, and dictionary definitions, while broad, leaves ambiguity as to whether the term is inclusive of expert fees. In contrast, courts within this circuit have considered expert witness fees to be a litigation expense where other parts of the statute provided the requisite clarity. *See, e.g.*, *Calef v. FedEx Ground Packaging Sys., Inc.*, No. 1:06-cv-47, 2008 WL 11426869, at *5 (N.D.W. Va. Oct. 7, 2008) (finding that expert fees are recoverable as a litigation expense under the Americans with Disability Act ("ADA") because the preamble to the ADA states that litigation expenses include expert fees (citing *Jones v. White*, No. H-03-2286, 2007 WL 2427976, at *8 (S.D. Tex. Aug. 22, 2007))). Ultimately, Congress knows how to provide explicit statutory authority for the recovery of expert witness fees. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 251 (1994) (noting that Congress amended 42 U.S.C. § 1988 to allow for recovery of expert fees in response to *Casey*); *Gortat v. Capala Bros., Inc.*, 795 F.3d 292, 296 (2d Cir. 2015)

(listing statutes that explicitly allow courts to award expert witness fees). Congress did not do so here.[5]

The VCPA likewise does not provide explicit authority to award expert-witness fees, as it states only that a prevailing consumer "may be awarded reasonable attorneys' fees and court costs." Va. Code Ann. § 59.1-204; *see Lannon v. Lee Conner Realty Corp.*, 385 S.E.2d 380, 383 (Va. 1989) (applying the American Rule in Virginia and requiring a specific contractual or statutory provision to contravene it); *Chacey v. Garvey*, 781 S.E.2d 357, 361 (Va. 2015) (noting that Virginia courts will strictly interpret the authority for awarding costs and attorneys' fees because it is in derogation of the common law). Finally, neither the Stipulation (ECF No. 71), Settlement (ECF No. 77), nor the Buyer's Order (ECF No. 36-1) authorize an award of expert fees.

Accordingly, the court will exclude the requested expert witness fee from Shore's award. The remaining costs, however, are recoverable under 28 U.S.C. § 1920 and are reasonable. The court will therefore award Shore $345.93 in costs.

### III.  CONCLUSION

For the forgoing reasons, the court will award attorney's fees to Shore, the prevailing party, in the amount of $69,487.50. Costs will also be awarded in the amount of $345.93.

The Clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

---

[5] In her Reply Brief (ECF No. 88), Shore cites *Bowden v. Forest River, Inc.*, No. 1:18-cv-1578, 2020 WL 3584792, at *5 (E.D. Va. June 30, 2020), in her argument that expert fees are recoverable under the MMWA. Though it is true that the *Bowden* court awarded the Plaintiffs expert fees under the MMWA, the court did not undertake any statutory analysis as to whether they were authorized. *See id.* Therefore, *Bowen* is not persuasive for the proposition that the MMWA authorizes recovery of expert fees.

**ENTERED** this 9th day of October, 2025.

                                          */s/ Thomas T. Cullen*  
                                        HON. THOMAS T. CULLEN  
                                        UNITED STATES DISTRICT JUDGE